# EXHIBIT "C"

Sharena Gilliland
District Clerk
Parker County, Texas
Stephanie Smith

CV16-0981

CAUSE NO. _____

| | | |
|---|---|---|
| SECURITY SELF STORAGE<br>Plaintiff, | § § § | IN THE DISTRICT COURT OF |
| v. | § § | PARKER COUNTY, TEXAS |
| LEXINGTON INSURANCE<br>COMPANY AND GLENN<br>HOLLMULLER<br>Defendants. | § § § § § § | Parker County - 43rd District Court<br><br>____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff SECURITY SELF STORAGE ("Plaintiff" or "Security"), files Plaintiff's Original Petition, complaining of Defendants LEXINGTON INSURANCE COMPANY AND GLENN HOLLMULLER (collectively referred to as "Defendants"). For cause of action, Plaintiff would respectfully show this Honorable Court the following:

### I. DISCOVERY CONTROL PLAN AND AMOUNT IN CONTROVERSY

Plaintiff intends for discovery to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure. Pursuant to Texas Rule of Civil Procedure 47 (c)(4), Plaintiff affirmatively pleads that the amount in controversy in this case is over $1,000,000.

### II. PARTIES

Plaintiff Security Self Storage is a Texas based company doing business in the State of Texas.

Defendant Lexington Insurance Company is an insurance company engaging in the business of insurance in the State of Texas. This Defendant can be served with process by serving its registered agent Commissioner of Insurance, David Mattax, 333 Guadalupe, Austin, Texas 78701.

**Service is requested at this time.**

PLAINTIFF'S ORIGINAL PETITION                                                                                          Page 1

Defendant Glenn Hollmuller is Lexington's employed Executive General Adjuster residing in and doing business in the State of Texas who can be served with process at 4251 F.M. 2181, Suite 230, No. 203, Corinth, Texas 76210. **Service is requested at this time.**

### III. JURISDICTION

The court has jurisdiction over the causes of action because the amount in controversy is within the jurisdictional limits of the court.

This court has jurisdiction over Defendants because they are registered to engage in the business of insurance in the State of Texas and the causes of action arise out of these Defendants' business activities in the State of Texas.

### IV. VENUE

Venue is proper in Parker County, Texas, because the subject commercial property is situated in Parker County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE. §15.032. In addition, all or a substantial part of the events or omissions giving rise to the claims occurred in Parker County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE. §15.002(a)(1).

### V. FACTS

On December 28, 2012, Lexington insured Security's commercial property (through policy no. 019260271-00) for wind and hail loss and continued to provide this coverage for the property through March 4, 2015. The policy carried direct physical loss property limits of $1,722,000 along with a $10,000 wind and hail deductible and the policy contracted for premiums were established based on this value. The terms of the policy are incorporated herein by reference. Notably, the policy did not include a cosmetic damage waiver excluding roof coverage for purported cosmetic damage only caused by direct physical loss from hail impact. All premiums were paid and accepted on the

Lexington policies made basis of this suit covering Security's property from December 28, 2012 through March 4, 2015.

During Lexington's coverage period, on or around May 15, 2013, Security's property sustained substantial and severe wind and hail damage to the roof surfaces, exterior and interior finishes. On July 27, 2015, and again on April 22, 2016, Lexington and Co-Defendant Adjuster Hollmuller denied Security's storm damage claim in all respects.

During the course of Lexington's and Adjuster Hollmuller's limited and result-oriented investigation, Engineer Michele Bogdon with EFI Global was retained and conducted an inspection along with Hollmuller of Security's property on May 28, 2015. Hollmuller represents through the July 27, 2015 denial letter that Bogdon opined as follows:

- Damage to overhead doors were from various mechanical impacts, wear and tear and "possible" hail; "the doors that appeared to have hail damage faced South and West;"
- Bogdon observed "hail strike locations (dents) but no <u>functional damage</u> *(emphasis added)* in <u>each</u> *(emphasis added)* test square for <u>each</u> *(emphasis added)* building;
- Despite the lack of a cosmetic damage waiver endorsement, Hollmuller proceeds to emphasize and describe in great detail in the denial letter that Engineer Bogdon did not find any functional damage to the roofing system;
- Engineer Bogdon's weather research revealed <u>twelve</u> *(emphasis added)* hail storm events with .75 inch to 1.7 inch hail diameter reported in the last nine (9) years;
- Based on Engineer Bogdon's opinions, Adjuster Hollmuller opined in the denial letter that "the observed [hail] indentations in the [roof] metal surfaces [was] most likely due to a <u>combination of the twelve hail storms</u> *(emphasis added);*"

Hollmuller denied Security's hail damage claim although he and his retained expert found extensive hail damage to each and every test square to each and every metal roof of each and every building. And, the improper denial was extended despite Hollmuller's indication that the hail damage was due to a combination of the twelve (12) storms found by the Engineer over a nine (9) year period—approximately 1/3rd of this period Lexington was on this risk. Of note,

during the time Lexington insured Plaintiff's property, there were eight (8) hail storms producing hail from .8 to 1.4 inches spotted within a three (3) mile radius.

Although Hollmuller's denial letter is not discernable nor fully explanatory at times (in violation of Article 541 of the Texas Insurance Code), it appears there are two (2) separate grounds for Lexington's improper denial. That is, Lexington could not determine if the covered direct physical loss hail damage found by its Expert Engineer occurred during Lexington's policy periods extending from December 28, 2012 through March 4, 2015 and, even if such loss did occur during that relevant time, Lexington was not promptly notified of the loss which as required by Texas law prejudiced its investigation.

First, irrespective of any date of loss reported by an insured such as Security, it is Lexington's obligation under the Insurance Code and Common law to determine if there is "a" covered loss occurring during its coverage period of December, 2012 through March, 2015. Lexington cannot play the "I gotcha game" advising that storm data does not reveal a specific storm event on the specific day reported by the insured and avoid coverage as Lexington would advance. Lexington, by its own admissions in the denial must afford coverage, as it is Lexington, not Security's burden, to determine if a covered hail event occurred during Lexington's policy periods—and, Lexington and Hollmuller admitted that their own Expert could not make that determination one way or the other. In fact, the opposite is true in that there was .9 inch hail spotted on the reported date of loss of May 15, 2013 within one (1) mile of Plaintiff's property as documented by Lexington's Engineer but completely overlooked by Lexington. Given it is Lexington's burden to determine if there was a covered hail event occurring during its policy periods and considering Lexington's own Expert Engineer said that could not be determined one way or the other, pursuant to the Texas Insurance

Code and Common law it is Lexington's obligation to err on the side of the insured and afford coverage for this total roof hail loss. So, that said, Lexington's initial basis for denial is baseless and has no merit.

Moving on, as to the second prompt notice basis, Lexington has not and cannot show there was any prejudice in any alleged reporting delay by Security such that this defense has no merit as well. To explain, the reported date of loss was May 15, 2013—*five (5) months after Lexington began insuring this property and nearly two (2) years before Lexington discontinued insuring the property* (and, during the insured period, Lexington and Hollmuller acknowledge there were numerous hail producing events)—and Lexington further ruled out any prejudice when Hollmuller and the Engineer go to great lengths to indicate that the observed hail damage did not create any "functional" loss (water damage, etc) to the building as there was no storm created opening observed. And, further, Lexington/Hollmuller only globally reference their investigation was prejudiced by an alleged reporting delay without providing any explanation and basis in that regard as required by Insurance Code Article 541.

Overall, as articulated above, this was a pre-determined, pre-textual and result-oriented investigation by Lexington, Hollmuller and Bogdon. Lexington's denial contradicts Hollmuller's investigation finding direct physical hail loss to all test squares of all metal roofs of all buildings, necessitating a full roof replacement and a replacement of the hail damaged roll up doors which will likely exceed $700,000. Of note, in Hollmuller's denial letter, the only damage noted to the metal roof surfaces was hail and there is no mention of any excluded damage to the roofs themselves. Lexington either did or, under the Insurance Code, should of conducted an underwriting inspection prior to the December, 2012 policy issuance and therefore accepted premiums and accepted the risk

in the condition the property presented itself at that time despite any prior alleged hail storms. Bottom line, here, we have acknowledged direct physical loss from hail to all roof surfaces that Lexington (as it is the carrier's burden) by its own admission could not rule out occurred during its policy periods and/or should have been discovered by Lexington when it insured the property in December, 2012 and welcomingly started accepting Security's premiums. There is coverage for this loss and Lexington's denial is improper, conclusory and not supported by its own investigation.

As to the allegations asserted below relative to Adjuster Hollmuller, he failed to prepare any estimates or scopes of damage to the property. Rather, Hollmuller falsely represented that since he could not rule out the hail damage occurred during Lexington's policy periods, there was no coverage for this loss. Additionally, Hollmuller retained Engineer Bogdon who inadequately assessed the damage to the property by opining there was no functional damage when this policy covers what Lexington and Hollmuller term cosmetic damage (no cosmetic damage waiver—only direct physical loss policy requirement). Throughout the claim process, Hollmuller did not provide updates to Security, prolonging and delaying any claims resolution. Due to this, Security was forced to retain its own consultants who advised of noticeable covered losses occurring during Lexington's policy periods which Hollmuller continued to ignore.

The foregoing acts and omissions constitute improper claims handling practices or improper underwriting practices, and violate both Texas common law and the Texas statutory provisions set forth below.

As a result, Plaintiff has not been able to address the storm damage to this commercial property and were forced to retain the undersigned's services for Lexington's and Hollmuller's failure to honor their contractual obligations.

## VI. CAUSES OF ACTION

### CAUSES OF ACTION AGAINST DEFENDANTS

**A. DECLARATORY JUDGMENT**

Pursuant to the Texas Declaratory Judgment Act, Plaintiff is entitled to a declaration that the Policy provides coverage for the cost to repair and replace the damaged property. Plaintiff requests a declaration that the Policy unambiguously covers the damage to this property. Alternatively, Plaintiff requests a declaration that the Policy is ambiguous and must be interpreted in Plaintiff's favor.

**B. BREACH OF CONTRACT**

Defendants' conduct constitutes a breach of the insurance contract made between Defendants and Plaintiff. Defendants' failure and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of Defendants' insurance contract with Plaintiff. Plaintiff has satisfied all conditions precedent to the fulfillment of its contractual demands. Accordingly, additionally or in the alternative, Plaintiff brings an action for breach of contract against Defendants, pursuant to Texas statutory and common law, including Chapter 38 of the Texas Civil Practice and Remedies Code, and seeks all of its damages for such breach, including actual damages, consequential damages, personal property damage, business interruption expense, extra expense, attorneys' fees, prejudgment interest, other litigation expenses and cost of court.

**C. NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES**

Defendants' conduct constitutes multiple violations of Texas Insurance Code Chapter 541 and particularly TEX. INS. CODE §541.060(a). All violations under this Chapter are made actionable

by TEX. INS. CODE §541.151.

Defendants' unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(1).

Defendants' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(2)(A).

Defendants' unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE.§541.060(a)(3).

Defendants' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claims to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(4).

Defendants' unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(7).

D.   **NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
     PROMPT PAYMENT OF CLAIMS**

Defendants' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act. All violations made under this Chapter are made actionable by TEX. INS. CODE §542.060.

Defendants' failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claims, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

Defendants' failure, as described above, to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of a claim and a violation of TEX. INS. CODE §542.056.

Defendants' delay of the payment of Plaintiff's claim as described above, following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, constitutes a non-prompt payment of a claim and a violation of TEX. INS. CODE §542.058.

E.  **DECEPTIVE TRADE PRACTICES**

At all times pertinent, Plaintiff was a "consumer" as defined in Section 17.45(4) of the Texas Business and Commerce Code, referred to as the Deceptive Trade Practices-Consumer Protection Act ("DTPA.")

Defendants and its agents violated provisions of the DTPA including the following:

1. violations of the Texas Insurance Code as set forth above;

2. representing that the Policy had benefits which it did not have;

3. representing that the Policy conferred or involved rights and remedies that it did

not have;

4. promulgating and selling a Policy which is worthless, provides little or no coverage, and is illusory;

5. misrepresenting the terms of an agreement;

6. representing that the Policy had characteristics, standards or coverage which it did not have;

7. failing to disclose information that was known at the time of the purchase of the Policy because it was intended to induce Plaintiff into purchasing the Policy; and

8. engaging in an unconscionable act or course of action.

The deceptive acts and practices herein were in connection with Plaintiff's purchase of and claim under the Policy. Plaintiff relied on the false, misleading and deceptive acts and practices as alleged herein to its detriment, and the conduct described above was the producing cause of injury and damage to Plaintiff. As a result of the conduct of Defendants, Plaintiff has suffered damages including, without limitation, actual, economic and consequential damages.

One or more of the foregoing acts or omissions were "knowingly" made. Accordingly, Plaintiff will seek treble damages pursuant to TEX. BUS. & COMM. CODE §17.50(b)(1).

F. **BAD FAITH**

Defendants have refused to pay or have delayed paying a claim after liability has become reasonably clear. Defendants have refused to pay, delayed paying or have offered grossly inadequate and unconscionable sums to settle the claim submitted by Plaintiff. This constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts. Therefore, Defendants have acted in bad faith.

G.  **VICARIOUS LIABILITY/RESPONDEAT SUPERIOR/JOINT AND SEVERAL LIABILITY**

Plaintiff affirmatively pleads vicarious liability, respondeat superior as well as joint and several liability theories of recovery against Defendants. That is, at all times, Adjuster Glenn Hollmuller who adjusted the claim made basis of this suit were in the course and scope of employment for Defendant Lexington Insurance Company and were acting as duly authorized representatives with actual and apparent authority from Defendant Lexington. Therefore, Plaintiff pleads that all Defendants have joint and several liability for the deceptive acts, misconduct and misrepresentations of any other Defendant.

## VII. KNOWLEDGE AND INTENT

Each of the Defendants' acts described above, together and singularly, were done "knowingly" and "intentionally" and were a producing cause of Plaintiff's damages described herein.

## VIII. DAMAGES

Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

For breach of contract, Plaintiff is entitled to regain the benefit of its bargain, which is the amount of Plaintiff's claim, together with attorney's fees.

For noncompliance with Texas Insurance Code §541 and for non compliance with the DTPA, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times the actual damages. *See* TEX. INS. CODE §541.152.

For noncompliance with Texas Insurance Code §542, Plaintiff is entitled to the amount of Plaintiff's claim, as well as eighteen (18) percent interest per annum of the amount of such claim as damages, together with attorney's fees. *See* TEX. INS. CODE §542.060.

For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

For noncompliance with Texas Deceptive Trade Practices Act, Plaintiff is entitled to economic damages, which include the amount of benefits wrongly withheld. For knowing conduct violations, with regard to these breaches of duty, Plaintiff is entitled to damages for mental anguish, and Plaintiff also asks for three times the economic damages. For intentional conduct violations, with regard to these breaches of duty, Plaintiff is entitled to economic damages and damages for mental anguish, and Plaintiff asks for three times the amount of economic and mental anguish damages. Plaintiff is also entitled to court costs and attorney's fees. TEX. BUS. & COM. CODE §17.50(b)(1).

For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of attorneys. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

### IX. CONDITIONS PRCEDENT

All conditions precedent for Plaintiff to recover under the Policy have been or will be met.

## X. JURY DEMAND

Plaintiff is requesting a jury and is tendering the appropriate fee.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, said Plaintiff have and recover from Defendants such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages and exemplary/punitive damages under common law, the Texas Insurance Code and the DTPA. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this cause, for all costs of Court, for prejudgment and post-judgment interest, as allowed by law, and for any other further relief, either at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

LAW OFFICES OF DAVID L. CHUMBLEY, P.C.

By: _____
David L. Chumbley
State Bar No. 24032069

400 Chisholm Place, Suite 101
Plano, Texas 75075
Telephone: (972) 516-8808
Telecopy: (972) 516-8819
Email: davidchumbleypc@gmail.com

**ATTORNEYS FOR PLAINTIFF**